■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUIS RAMOS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Linakis, J.), rendered April 17, 1986, convicting him of attempted murder in the second degree, assault in the first degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial of that branch of the defendant's omnibus motion which was to suppress identification testimony.

Ordered that the judgment is affirmed.

The victim, a television producer and photographer, viewed a lineup 16 days after the crime. At the suppression hearing,

he testified that although he instantly recognized the defendant as his assailant, he continued to scrutinize the lineup for 2 or 3 more minutes, out of extra caution, before identifying the defendant. He then requested a closer view of the defendant because the defendant appeared to have more facial hair at the lineup than he had at the time of the crime. The victim then briefly left the viewing room. When he returned, the defendant was standing eight feet closer than the five fillers, all of whom were seated. The victim then reaffirmed his initial identification.

Although the second viewing was in the nature of a showup, it was merely confirmatory (see, People v Morales, 37 NY2d 262, 271-272; People v Scott, 124 AD2d 684), and it did not taint the first viewing or the in-court identification. This is not a situation in which the stimulus to identify the defendant was placed in the victim's mind by procedures selected by the police (cf., People v Adams, 53 NY2d 241). The hearing court properly concluded that the procedure used was not likely to give rise to a substantial likelihood of "irreparable misidentification" (see, Manson v Brathwaite, 432 US 98, 107; Neil v Biggers, 409 US 188).

Furthermore, we agree with the hearing court's determination that the victim had a basis for the in-court identification independent of the lineup procedures. The victim had both the opportunity and ability to form a mental image of his assailant, whom he faced directly throughout the encounter. In addition, the victim provided a detailed description of his assailant which matched the defendant (see, People v Mallory, 126 AD2d 750).

Finally, although the victim's testimony that he told his wife that he was certain that the man he selected at the lineup was his assailant constituted improper bolstering, the error was harmless. In light of the strong identification testimony adduced at trial, there was no significant probability that but for the bolstering testimony the defendant would have been acquitted (see, People v Johnson, 57 NY2d 969; People v Green, 121 AD2d 739). Bracken, J. P., Kunzeman, Spatt and Harwood, JJ., concur.